# EXHIBIT B

 **QUANTLAB**

Quantlab Financial, LLC    713 333-5440
3 Greenway Plaza          : 713 333-5464
Suite 200
Houston, Texas 77046      QUANTLAB.COM

September 28, 2017

Via e-mail: dr10000@hotmail.com

Dr. David Reynolds
PO Box 2499
Onalaska, TX 77360-2499

Re: Letter Agreement

Dear David:

As you depart, the Company is willing to pay certain separation benefits to ease your professional transition.

### General Release and Waiver

In exchange for certain separation benefits to which you would not otherwise be entitled, by signing below you agree to release the Company (defined below) from any and all claims that you may have.

More specifically, in consideration for the Severance Terms specified at the end of this letter agreement (this "Agreement"), less applicable payroll taxes and withholding according to the Company's normal payroll practices, you and any person acting by, through, or under you, hereby release, waive, and forever discharge QUANTLAB FINANCIAL, LLC, its subsidiaries and affiliates[1] and all of their respective agents, employees, officers, directors, shareholders, successors, and assigns (the "Company") from any and all actions, demands, obligations, agreements, or proceedings of any kind, whether known or unknown, at this time, arising out of, or connected with, your employment with the Company, your separation from the Company, and/or termination of your employment. This includes, but is not limited to all matters in law, in equity, in contract, or in tort, or pursuant to statute, including damages, attorney's fees, costs and expenses and, without limiting the generality of the foregoing, to all claims arising under the following:

- The Age Discrimination in Employment Act of 1967, as amended (ADEA)
- The Older Worker Benefit Protection Act (OWBPA)
- Title VII of the Civil Rights Act of 1964

---

[1] For purposes of this Agreement, "affiliate" shall mean any person or entity that directly or indirectly controls, is controlled by, or is under common control with Employer. In addition, QUANTLAB FINANCIAL, LLC, and such other persons or entities with whom or which the Company provides services shall also be treated as affiliates for purposes of this Agreement and any and all of such affiliates' related companies, predecessors, successors, and assigns and any new entities that may be created by any of them in the future.



- The Civil Rights Act of 1991

- The Americans With Disabilities Act

- Chapters 21 and 451 of the Texas Labor Code

- And any other federal, state, or local law, statute, or ordinance affecting your employment with or separation from the Company.

You hereby affirm and agree that your post-employment obligations under your Employee Loyalty, Confidentiality, Inventions, Non-solicitation and Non-competition Agreement (your "Loyalty Agreement") are not extinguished by this Agreement, that they are reasonable and enforceable as written, and that they remain in effect and are incorporated herein to the full extent necessary to make them enforceable. You hereby agree to waive any and all claims contrary to the foregoing affirmation, and agree not to file or pursue any lawsuit or legal claim contesting the enforceability of the Loyalty Agreement as written. You also agree to retain in confidence any and all confidential information known to you concerning the Company and its affiliates unless and until such information is publicly available through legitimate (and not improper) means.

You understand this Agreement and release does not apply to: any claims or rights that may arise after the date that you sign this release, the consideration for this release, the Company's expense reimbursement policies, vested rights under the Company's ERISA-covered employee benefit plans as applicable on the date that you sign this Agreement, and any claims that the controlling law clearly states may not be released by settlement.

You also understand that in the event the Company reemploys you during the period for which the severance benefits are being paid, you agree that the Company may withhold, or if the Company has paid all benefits in a lump sum to repay, any remaining portion of your severance benefits.

### Voluntary Agreement: Advice of Counsel; 21-Day Period

You acknowledge that:

- You have read this document, and you understand its legal and binding effect. You are acting voluntarily and of your own free will in executing this release.

- The consideration for this Agreement and release is in addition to anything of value to which you already are entitled.

- You have had the opportunity to seek, and you were and are hereby advised in writing to seek, legal counsel prior to signing this release.

- You have been given at least 21 days to consider the terms of this release before signing it. You knowingly and voluntarily waive the remainder of the 21-day consideration period, if any, following the date you sign this release below. You have not been asked by the Company to shorten your time-period for consideration of whether to sign this release. The Company has not threatened to withdraw or alter the benefits due you prior to the expiration of the 21-day period nor has the



Company provided different terms to you because you have decided to sign this release prior to the expiration of the 21-day consideration period. You understand that if you waive some portion of the 21-day consideration period, the Company may expedite the processing of benefits provided to you in exchange for signing this release.

- You agree with the Company that changes, whether material or immaterial, do not restart the running of the 21-day consideration period.

- You represent that you have as of the date you sign this Agreement (i) received all compensation due to you as a result of services performed for the Company according to the Company's normal payroll procedures; (ii) reported to the Company any and all work-related injuries incurred by you during your employment by the Company; and (iii) been properly provided any leave of absence because of your or a family member's health condition and have not been subjected to any improper treatment, conduct or actions due to a request for or taking such leave.

### Revocation

You understand that if you sign this Agreement, you can change your mind and revoke it within seven days after signing it by providing written notice of revocation to **Tim McInturf, Chief Administrative Officer, 3 Greenway Plaza, Suite 200, Houston, Texas 77046.** To ensure delivery, we recommend sending a copy by email to tmcinturf@quantlab.com. You understand that the release and waiver set forth in the first paragraph above will not be effective until after this seven-day period has expired, and you will receive no benefits before the eighth day after you sign this release.

### Binding Agreement

You understand that following the seven-day-revocation-period, this release will be final and binding. You promise that you will not pursue any claim that you have settled by this release.

If you break this promise, you agree to pay all of the Company's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims except this promise not to sue does not apply to claims that you may have under the OWBPA and the ADEA.

Although you are releasing claims that you may have under the OWBPA and the ADEA, you understand that you may challenge the knowing and voluntary nature of this release under the OWBPA and the ADEA before a court, the Equal Employment Opportunity Commission (EEOC), the National Labor Relations Board (NLRB), or any other federal, state or local agency charged with the enforcement of any employment laws.

You understand, however, that if you pursue a claim against the Company under the OWBPA and/or the ADEA, a court has the discretion to determine whether the Company is entitled to restitution, recoupment, or set off (hereinafter "reduction") against a monetary award obtained by you in the court proceeding. A reduction never can exceed the amount you recover, or the consideration you received for signing this release, whichever is less.



You also recognize that the Company may be entitled to recover costs and attorney's fees incurred by the Company as specifically authorized under applicable law. You further understand that nothing in this release generally prevents you from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the Securities and Exchange Commission, EEOC, NLRB, or any other federal, state or local agency charged with the enforcement of any laws, although by signing this release you are waiving your right to individual relief directly from the Company based on claims asserted in such a charge or complaint to the extent they may legally be waived.

### Company Property; Confidentiality; Non-disparagement; General Provisions

You agree to immediately return all confidential information, computer hardware or software, files, papers, memoranda, correspondence, customer lists, financial data, credit cards, keys, tape recordings, pictures, and security access cards, and any other items of any nature which were or are the property of the Company. You further agree not to retain any copies of any such property in your possession or under your control. You hereby represent to the Company that you have complied with all of your confidentiality obligations to the Company to date and have not provided copies of Confidential or Proprietary Information records of any kind (via email, electronic storage device, written or oral reports) to any persons not authorized to receive them under the Loyalty Agreement.

Subject to the exceptions enumerated below, you agree to maintain the confidentiality of the terms of this Agreement and will not disclose in any fashion the terms of this release, any work-related events that occurred during your employment, the amount of the benefits that you received under this Agreement, and/or the substance or content of discussions involved in this release to any person other than your attorneys, accountants, and tax advisors as required by appropriate taxing authorities, or otherwise as required by law. Subject to the exceptions enumerated below, you agree to refrain from making any negative or disparaging comments about the Company, its Affiliates, owners, managers, employees, agents or representatives, either publicly or privately.

You must give fully truthful answers and testimony in connection with any legal or regulatory matter. Otherwise, if inquiries are made of you regarding your employment with the Company or events during your employment, you will state that such matters are confidential and not further characterize events that happened during your employment. Nothing in this Agreement or any other agreement or policy of the Company prohibits you from reporting an event that you reasonably and in good faith believe is a violation of law to the relevant law-enforcement agency (such as the Securities and Exchange Commission), requires you to notify or get permission from the Company before such report, or prohibits cooperating in an investigation conducted by such a government agency, and you have been notified that you cannot be prosecuted civilly or criminally for a disclosure of information that complies with the limitations of the Defend Trade Secrets Act of 2016, 18 U.S.C. §1833(b) (Exhibit A). You further understand, however, that other Company policies may require you to report the underlying event (but not the fact that you reported it to an authority or are cooperating in an investigation) to the Chief Compliance



Officer or other member of management in a position to take corrective action. In all other respects this Agreement's confidentiality obligations (inclusive of those in the Loyalty Agreement) will be respected and any disclosures of confidential information under the foregoing exception shall be limited to only what is necessary for law enforcement purposes (such as communications with the relevant government agency or court or your legal counsel).

You agree upon request to provide continuing reasonable cooperation with the Company or any of its affiliates in responding to internal or governmental investigations; all reasonable expenses you incur in rendering cooperation requested by the Company will be reimbursed by the Company. As used in this Agreement, "cooperate" and "cooperation" includes making yourself available in response to all reasonable requests by the Company or the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA) or other government or regulatory authority, including self-regulatory organizations, for information, whether the request is informal or formal (e.g., in response to a subpoena in a legal proceeding), and includes fully, completely, and truthfully answering questions or providing testimony in any related proceeding, civil or criminal. Cooperation includes refraining from engaging in any conduct that expressly or impliedly unfairly and/or inaccurately paints the Company in a negative light.

The validity of this release shall be construed under Texas law unless federal law pre-empts Texas law with respect to some issue. This Agreement constitutes the complete and total agreement between the Company and you with respect to the issues addressed in this Agreement. Provided, however, this Agreement does not in any way alter, affect, modify, or nullify the Loyalty Agreement or any other agreement you have entered into with the Company which obligates you to protect or handle the Company's confidential information in a certain way, refrain from competing with the Company, and/or solicit Company employees or customers after your employment ends. You represent that you are not relying on any other agreements or oral representations not fully expressed in this document. You agree that this release shall not be modified, altered, or discharged except by written instrument signed by an authorized Company representative and you. The headings in this document are for reference only, and shall not in any way affect the meaning or interpretation of this Agreement. You further agree that this document may be used as evidence in a subsequent proceeding in which the Company or you allege a breach of this release or as a complete defense to any lawsuit. Other than this exception, you agree that you will not introduce this Agreement as evidence in any administrative proceeding or in any lawsuit. You agree that should any part of this release be found to be void or unenforceable by a court of competent jurisdiction, that determination will not affect the remainder of this release.

You have read and understand this Agreement as set forth above. By signing below, you accept the consideration stated below and agree to be bound by the terms of this Agreement.

We wish you much success in your future endeavors.



Sincerely,

Tim McInturf
Chief Administrative Officer,
General Counsel & Secretary

[Severance Terms on next page]



<u>Severance Terms</u>

Provided you fully comply with the terms of this Agreement:

- Your QTPUS, LP capital balance will be redeemed out of the limited partnership at the end of October 2017, subject to the terms of the limited partnership agreement.

- Non-competition period: The Company will limit the non-competition period of paragraph 4(c) of your Loyalty Agreement to one year and waive the second year of the non-competition period in the Loyalty Agreement. All other provisions in the Loyalty Agreement, e.g., the non-disclosure, the non-solicitation, or the remedies clauses, shall remain unaffected.

- Quantlab Incentive Partners:

    o Pursuant to one or more Vesting and Participation Agreements (collectively, the "Original VPA") that Participant (as defined in the Original VPA) has previously entered into, with respect to the Operating Profit Interest held by the Participant, his right to share in the annual QLF PL for any calendar year that ends prior to the date of any Capital Event requires that such Participant be "employed" by QLF as of the last day of the applicable calendar year, or if a Capital Event occurs during any calendar year then be "employed" as of the date of such Capital Event (collectively, the "Operating Profit Vesting Date"). For purposes of the foregoing, as a result of this Agreement the Participant will cease to be treated as being "employed" under the terms of the Original VPA such that from and after the effective date of this Agreement the Participant will cease to vest in any future Operating Profit Interest for periods after December 31, 2016.

    o Pursuant to the Original VPA the Participant does not start to vest in the Capital Event Interest until the occurrence of a Capital Event which, as of the date of this Agreement, has not yet occurred. However, as part of the terms of the Participant's termination as provided for in this Agreement, the Company has agreed to allow the Participant to continue to retain the Capital Event Interest after he ceases to be "employed" by QLF subject to the other provisions in the Original VPA (i.e.: the disclosure of Confidential Information, Non-Solicitation, Non-Interference, and Non-Disparagement - the "Continuing Obligations") but to allow the Participant to become 100% vested under said Original VPA on the occurrence of a Capital Event.



- o In order to effectuate the foregoing the following steps shall be undertaken contemporaneous with the execution of the Agreement:

  - The Company shall cause the manager of QIP to assign to Participant a 31.6474% Class B limited partnership in QLG (i.e.: 87.2110%% x 36.2883%) in the form attached as Exhibit A which assignment shall reinforce the Participant's Continuing Obligations under the Original VPA;
  - QLG and the Participant shall enter into a Supplement Agreement to Letter Agreement Relating to Rights in Quantlab Incentive Partners I, LLC in the form attached hereto as Exhibit B wherein the 87.2110% share of the 1.3790% share of the QLF LP that is otherwise attached to the 31.6474% Class B limited partnership interest in QLG assigned to the Participant in step 1 above is extinguished and terminated such that the Participant shall have a ZERO percent share in any future QLF LP generated by QLG;
  - The Company shall prepare a new VPA to account for the Participant no longer being "employed" by QLF but to otherwise require the Participant to be subject to the Continuing Obligations as a condition to retaining the Capital Event Interest in the form attached hereto as Exhibit C.
  - The Participant shall contribute the Capital Event Interest into Quantlab Incentive Partners IV, LLC ("QIP4") which entity shall then hold the direct Class B limited partnership interest in QLG. The form operating agreement for QIP4 is attached hereto as Exhibit D.

Acceptance of Severance Terms (to be signed on or within 21 days after the receipt of this Agreement):

Your Signature: _David Reynolds_

Date: _10/13/17_



**Exhibit A**

**Notice of Defend Trade Secrets Act of 2016 – Immunity Provision**

Pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. §1833(b):

(1) no individual will be held criminally or civilly liable under Federal or State trade secret law for the disclosure of a trade secret (as defined in the Economic Espionage Act) that: (a) is made in confident to a Federal, State or local government official, either directly or indirectly, or to an attorney; and made solely for the purpose of reporting or investigating a suspected violation of law; or, (b) is made in a complaint or other documented filed in a lawsuit or other proceeding, if such filing is made under seal so that it is not made public; and,

(2) an individual who pursues a lawsuit for retaliation by an employer for reporting a suspected violation of the law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal, and does not disclose the trade secret, except as permitted by court order